**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**DANA SNIEGOCKI, ESQ.**
Nevada Bar No. 11715
E-mail: dsniegocki@hkm.com
**REX M. MARTINEZ, ESQ.**
Nevada Bar No. 15277
E-mail: rmartinez@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
E-mail: jfoley@hkm.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| LEONARD C. WARREN, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>STAYSAVER VACATIONS, LLC, a foreign limited-liability company,<br><br>Defendant. | **CASE NO.:**<br><br>**COMPLAINT AND JURY DEMAND** |

The Plaintiff Leonard C. Warren ("**Mr. Warren**" or "**Plaintiff**") by and through his attorneys, of HKM Employment Attorneys LLP, hereby complain and allege as follows:

### JURISDICTION

1.  This is an action for damages brought by Plaintiff for unlawful workplace discrimination and retaliation based on race under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., and Nevada Revised Statute §613.330 *et seq*.; for violation of the Civil Rights Act of 1871, §1981; and for certain claims brought pursuant to the Nevada Revised Statutes as outlined below.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C. §2000e-5(f)(3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. § 1367.

3. All material allegations contained in this Complaint are believed to have occurred in Clark County, Nevada. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDY

4. On or about March 10, 2021, Plaintiff initiated the process of filing a Charge of Discrimination against his employer, the Defendant named in this action with the Nevada Equal Rights Commission wherein he alleged discrimination based on race, age, sex, and retaliation.

5. On or about March 30, 2021, Plaintiff received his Notice of Right to Sue from the EEOC.

6. This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

7. Plaintiff has exhausted his administrative remedy on all claims pled hereunder prior to filing this action with this Court.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

9. Plaintiff is a United States citizen and current resident of Clark County, Nevada.

10. Defendant STAYSAVER VACATIONS, LLC (hereinafter "**Company**" or "**Defendant**") is a foreign limited-liability company and an employer in the State of Nevada.

11. At all times relevant to this matter, Defendant had over 50 employees, and is therefore subject to the provisions of Title VII.

12. Plaintiff is an African American male.

13. Plaintiff has over thirty-five years of sales experienced and two formal degrees.

14. Plaintiff began working for Defendant in or around June 2020 as a Sales

1    Representative ("Sales Rep").

2        15.    Plaintiff predominately worked out of the Excalibur Hotel and Casino, where he

3    would operate a sales table as well as give sales presentations.

4        16.    Beginning on January 13, 2021, after a three-week furlough, David LNU

5    approached Plaintiff in the lobby at Staysaver Vacations before the morning sales meeting and

6    asked Plaintiff to walk with him away from the office.

7        17.    Plaintiff followed David to the Krispy Kream Doughnuts located in the food

8    court.

9        18.    David began by praising Plaintiff's job performance and told him that he was a

10   talented closer.

11       19.    Plaintiff believed that he was going to be given a promotion, since he had not

12   only been one of the top performers, but also because he had specifically requested for a

13   promotion on multiple occasions.

14       20.    Instead, David instructed Plaintiff to help Jackie LNU, a "T.O. Manager," who

15   was not performing as well as other employees.

16       21.    Plaintiff explained that Jackie was often late to getting to the sales table and

17   routinely failed to close deals.

18       22.    David explained to Plaintiff that other managers were jumping ahead of Jackie

19   and so she was not getting her share of closing opportunities.

20       23.    Upon information and belief, Plaintiff disagreed as to David's reasoning as he

21   had just explained to David that Jackie had several shortcomings.

22       24.    Nevertheless, David insisted that Plaintiff support Jackie.

23       25.    David then instructed Plaintiff not to tell anybody about the conversation that

24   they had just had regarding Jackie.

25       26.     Plaintiff was not only confused by David's demand to keep the conversation

26   between them, but he was also confused by the fact that he was not a Training Manager or in

27   any staff management position that would have control over Jackie.

28       27.    In fact, David was a Training Manager and was in control of the sales floor

Page **3** of **12**

1    traffic, lead flow, as well as who got assigned to certain tables for closing.

2        28.    Plaintiff felt uncomfortable with David's command to help Jackie, but because

3    of David's tone and demeanor, Plaintiff believed that helping Jackie was a condition of his

4    employment.

5        29.    Following David's instruction, because Plaintiff feared for his job, he texted

6    Jackie in an attempt to set up a meeting to go over closing techniques, but Jackie replied that

7    she was too busy to talk and the meeting never happened.

8        30.    Upon information and belief, the following work week, Plaintiff was isolated in

9    a sales room for a sales presentation.

10       31.    David was the only manager present, overlooking Plaintiff's presentation.

11       32.    Upon information and belief, while Plaintiff was giving the presentation, Jackie

12   begged David for the sale.

13       33.    When Plaintiff concluded his presentation, Jackie appeared to try and close the

14   deal.

15       34.    However, Jackie failed to close the deal.

16       35.    Upon information and belief, Plaintiff believes that other Managers would have

17   been able to close the deal.

18       36.    The following day, upon information and belief, Plaintiff was put in an almost

19   identical situation, where he was once again isolated in a sales room to give another

20   presentation, with David observing and Jackie in the closing position.

21       37.    Once again, after Plaintiff's presentation, Jackie failed to close the deal.

22       38.    Upon information and belief, Plaintiff was in disbelief as to why he was the only

23   person being forced into these positions when there were over twenty-five other sales

24   representatives.

25       39.    Accordingly, on or about January 15, 2021, Plaintiff discussed the matter with

26   his Team Leader, Lee Morgan.

27       40.    Following the morning sales meeting, Plaintiff expressed to Mr. Morgan that he

28   was uncomfortable with David forcing him to help Jackie.

41.     Plaintiff further expressed to Mr. Morgan that he was uncomfortable being the only Sales Representative that was being isolated on the sales floor with Jackie when there were several other closers.

42.     Plaintiff also reported to Mr. Morgan that David had instructed him to keep their previous conversation regarding the forced assistance of Jackie quiet.

43.     Plaintiff stated to Mr. Morgan that this also made him uncomfortable because there were so many others that could close the deals but that he was being forced to help Jackie.

44.     Upon information and belief, it had already been a few weeks, and Plaintiff explained that Jackie was not performing any better and that her performance, or lack thereof, was directly affecting Plaintiff's job and compensation.

45.     Plaintiff once again mentioned the promotion that he had requested prior because he was such a strong performer, and that he had significantly more experience than Jackie as well as other Manger TOs.

46.     Mr. Morgan replied to Plaintiff's legitimate inquiry dismissively, telling him to just go along with it for now, essentially telling Plaintiff to continue accepting being exploited.

47.     Upon information and belief, the same day, Plaintiff asked David to pay a $200.00 commission that was owed to Plaintiff following a $9,000.00 deal that David closed and got paid for because of Plaintiff.

48.     Plaintiff was told that he was not entitled to the $200.00 because Plaintiff had been furloughed, despite Plaintiff being the one who brought in the customer.

49.     Plaintiff expressed that it was unfair that he was not being paid the wages he was owed.

50.     Upon information and belief, shortly thereafter on the same day, Jackie was trying to close a deal for Plaintiff, but she was once again floundering in closing the deal.

51.     Plaintiff, as a form of support, called her away from the table to give the tour time to think.

52.     When Plaintiff did so, he utilized the opportunity to reassure her and help her close the deal.

53.     During this time, Plaintiff further reassured Jackie that she was being supported by the Company because he was instructed to help her progress.

54.     Specifically, Plaintiff told Jackie that he had "over 40 years of experience in sales and that [Plaintiff] would help her."

55.     Upon information and belief, David was in close enough proximity that he heard Plaintiff express his support of Jackie.

56.     Jackie then hugged and thanked Plaintiff for his support and returned to the table and closed the deal.

57.     Upon information and belief, not long after, Plaintiff, who was still supporting Jackie, noticed that she was still being late and failing to close deals.

58.     Accordingly, during this work week, Plaintiff sold two more deals with other closing managers, David being one of them.

59.     Upon information and belief, during this week, Plaintiff ended with a total of three deals, which amounted to over $13,000.00, which meant that his commission for the week should have included $400.00.

60.     Upon information and belief, Plaintiff was told by David that he would be paid the commission owed on January 17, 2021.

61.     Upon Plaintiff's arrival to work on January 17, 2021, Plaintiff was asked to speak with David in his office before the morning meeting.

62.     Plaintiff thought that David was pulling Plaintiff aside to pay him the commissions that he was owed and previously discussed.

63.     Plaintiff was instead terminated by David who informed Plaintiff that he was being terminated for sexual harassment.

64.     Dumbfounded, Plaintiff inquired with David as to how this fabricated claim could be true and asked for details as to who could even make such an accusation.

65.     David did not respond to Plaintiff's legitimate inquiries, and instead told him that he must "pony up" for a lawyer to obtain such information.

66.     Upon further inquisition by Plaintiff, David also stated that he had fired Jules

25

LNU, another highly qualified African American salesperson for sexual harassment.

67. Plaintiff then contacted Jules and asked about his termination, in which Jules explained that he had been supposedly terminated for sexual harassment, even though there was no allegation, investigation, or even facts to support such an outrageous allegation.

68. The conversation with Jules confirmed that David, upon information and belief, was fabricating sexual harassment complaints to terminate Plaintiff, as well as other African American employees.

69. After the phone call with Jules that confirmed that Defendant was terminating people based on false allegations, Plaintiff was told by David to pack up all of his things and leave.

70. Plaintiff was never paid the compensation that he was duly owed as he was immediately discontinued from the Company payroll, despite there being no investigation or any notification to Plaintiff regarding such baseless accusations.

71. Upon information and belief, all of the staff is Caucasian or Caucasian with Mexican decedent.

72. David is Caucasian.

73. Upon information and belief, Plaintiff was one of the top producers for the Company.

74. Plaintiff has been recognized for his superior work performance on several occasions.

75. Upon information and belief, Plaintiff and Jules were the only African Americans working in this position under David; both of whom were fired under false accusations.

**EMPLOYER/EMPLOYEE RELATIONSHIP ALLEGATIONS**

76. Defendant classified Plaintiff and its other sales reps as independent contractors even though it directly and indirectly controlled the manner in which they performed their work.

77. Defendant did not permit Plaintiff and its other sales reps to decide their own schedule or make their own hours.

78.     Defendant required Plaintiff and all its other sales reps to attend a daily morning meeting at 9:00 a.m. everyday.

79.     Plaintiff and the other sales reps were subjected to discipline if they failed to attend the mandatory 9:00 a.m. sales meeting.

80.     Plaintiff and Defendant's other sales reps were required to make specific and scripted sales pitches to Defendant's customers which were designed by Defendant, and Plaintiff and Defendant's other sales reps were not permitted to deviate from that scripted sales pitch.

81.     Defendant's designed sales pitch was laid out in a sales handbook/sales training manual that was given out to all its sales reps, including Plaintiff, and such persons were required to study, learn, and master such sales pitch.

82.     Plaintiff and the other sales reps were required to work until they were excused by their supervisors if they were not placed on the final sales tour of the day.

83.     If a prospective customer was interested in purchasing a membership during the last tour of the day, Plaintiff and the other sales reps were not allowed to leave until the sales transaction was complete.

84.     Plaintiff and the other sales reps were required to adhere to a strict "professional" dress code.

85.     On at least one occasion, Plaintiff was sent home by one of Defendant's managers because he was wearing a sweater that he was told did not fit Defendant's strict "professional" dress code.

86.     Plaintiff and the other sales reps were not required by Defendant to hold or possess any type of special license to sell memberships to Defendant's customers.

87.     Plaintiff and the other sales reps were not required by Defendant to hold or possess a business license to sell memberships to Defendant's customers.

88.     Defendant made all decisions regarding advertising, equipment, and other office supplies, and provided all the sales and marketing materials that Plaintiff and the other sales reps could use in order to sell memberships to Defendant's customers.

89.     In making a sales pitch to Defendant's customers, Plaintiff and the other sales reps had no authority to discount or negotiate the price of the memberships they were selling.

90.     Defendant regulated when Plaintiff and all other sales reps could take time off and required them to obtain approval before getting time off.

91.     Plaintiff and the other sales reps were required to attend mandatory training meetings in which they were instructed how to perform sales pitches, improve their sales pitches, and other sales techniques designed by Defendant.

92.     These mandatory training meetings occurred at least once a month or more, typically on a Saturday, and attendance was mandatory.

## FIRST CAUSE OF ACTION

**(Discrimination Based on Race in violation of Title VII, 42 U.S.C.  § 2000e-3 *et seq.* and State Law, NRS 613.340)**

1.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

2.     Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on race, disability, or a combination of both.

3.     Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination, NRS 613.330 *et. seq*., Title VII, 42 U.S.C. § 2000e et. seq. as amended and thus, has a legal obligation to provide Plaintiff with a work environment free from discrimination and harassment.

4.     Plaintiff and the only other African American were subjected to false allegations of sexual harassment, which Defendant pretextually used to terminate them.

5.     Plaintiff endured a series of discriminatory acts carried out by Defendant, the chief example being that Plaintiff was terminated because he was African American.

6.     No other similarly situated persons, not of Plaintiff's protected class were subject to the same or substantially similar conduct.

7.     Plaintiff suffered adverse economic impact due to Defendant's discriminatory behavior and termination.

8.      Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

9.      Plaintiff suffered compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by his employer.

10.     Plaintiff is entitled to be fully compensated for his emotional disturbance by being forced to endure this discrimination.

11.     Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's intentional repeated violations of federal and state civil rights laws.

12.     Plaintiff suffered damages in an amount deemed sufficient by the jury.

13.     Plaintiff is entitled to an award of reasonable attorney's fees.

14.     Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of his race and disability.

15.     Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## **SECOND CAUSE OF ACTION**

### **(Violation of the Civil Rights Act of 1871, §1981)**

16.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

17.     Plaintiff is African American and therefore a member of a protected class.

18.     Defendant engaged in the above-mentioned harassment and discrimination of Plaintiff with the purposeful intent to discriminate against his because of his race (African American).

19.     Under similar circumstances, other, white or non-African American employees were not subjected to a racially hostile working environment.

20.     Plaintiff was subject to disparate treatment and retaliation through adverse employment actions, and favorable behavior toward white employees, which is prima facie evidence of purposeful intent to discriminate against Plaintiff because of his race.

21.     Plaintiff suffered damages in an amount deemed sufficient by the jury.

22.     Plaintiff is entitled to an award of reasonable attorney's fees in this matter.

23.     Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly violated Plaintiff's rights under Section 1981 of the Civil Rights Act of 1871.

24.     Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## THIRD CAUSE OF ACTION

### (Intentional/Negligent Infliction of Emotional Distress)

25.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

26.     Defendant's conduct toward Plaintiff was extreme, outrageous, and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

27.     Defendant's conduct was extreme, outrageous, and undertaken with either intent or, reckless disregard for causing Plaintiff emotional distress.

28.     Plaintiff's physician required that he take short-term disability because of the mental distress that Plaintiff was suffering due to the hostile environment.

29.     Defendant had a duty to refrain from engaging in the hostile and retaliatory acts as described above.

30.     Defendant breached that duty.

31.     Defendant's intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

32.     Defendant must pay damages in an amount to be determined at trial but

1   exceeding $25,000 for emotional pain, suffering, inconvenience, mental anguish and loss of

2   enjoyment of life because they engaged in illegal actions.

3        33.    Because Defendant is guilty of oppression, fraud or malice, express or implied,

4   Defendant must pay Plaintiff an additional amount for the sake of example and by way of

5   punishment.

6        34.    Plaintiff has had to obtain the services of an attorney to protect his rights and

7   secure compensation for the damages incurred as a result of these violations and therefore, he

8   is entitled to recover reasonable attorney's fees against Defendant.

9        **WHEREFORE,** Plaintiff prays this court for:

10          a.  A jury trial on all appropriate claims;

11   moreover, to enter judgment in favor of the Plaintiff by:

12          b.  Awarding Plaintiff an amount sufficient to fully compensate his (including tax

13               consequences) for all economic losses of any kind, and otherwise make his

14               whole in accordance with Title VII, the Civil Rights Act of 1871, §1981, and

15               certain claims brought pursuant to the Nevada Revised Statutes;

16          c.  General damages;

17          d.  Special damages;

18          e.  An award of compensatory and punitive damages to be determined at trial;

19          f.  Pre- and post-judgment interest;

20          g.  An award of attorney's fees and costs; and

21          h.  Any other relief the court deems just and proper.

22   Dated this 28th Day of June, 2021.

23                                    **HKM EMPLOYMENT ATTORNEYS, LLP**

24

25                                   */s/ Jenny L. Foley*

26                                   **JENNY L. FOLEY, Ph.D., Esq.**
                                Nevada Bar No. 9017
                                Tel: (702) 805-8340

27                                   E-mail: jfoley@hkm.com
                                *Attorney for Plaintiff*

28